The STATE of Ohio, Appellant,

v.

BOYS, Appellee.

[Cite as *State v. Boys* (1998), 128 Ohio App.3d 640.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–970556 and C–970557.

Decided June 26, 1998.

*Fay D. DuPuis,* Cincinnati City Solicitor, *Terrence R. Cosgrove,* City Prosecutor, and *Kevin O. Donovan,* Senior Assistant Prosecutor, for appellant.

*Michael E. Finucane,* for appellee.

---

Doan, Presiding Judge.

Defendant-appellee, Stephen B. Boys, was charged with driving under the influence of alcohol pursuant to R.C. 4511.19(A)(1) and (A)(3). He moved to suppress the results of a breath test and other evidence, claiming, among other

things, that the stop of his vehicle and his subsequent arrest violated his Fourth Amendment rights.

The evidence presented at the hearing on the motion to suppress showed that police officers were dispatched to a McDonald's restaurant on Queen City Avenue to investigate a suspicious vehicle. When Officer James Kelleher arrived at the scene, several McDonald's employees pointed out the car. The manager, whom Kelleher had dealt with on previous occasions, explained that the driver had used the drive-through and had, at some point, fallen asleep at the wheel. She stated that the driver had pulled into a parking space and had been parked in the lot since that time.

Kelleher saw the car that the McDonald's employees had described; the engine was running and the driver appeared to be sleeping. Concerned about a possible medical problem, Kelleher and another officer approached the vehicle. He knocked on the window for approximately a minute before Boys, the driver, awoke. The officer asked Boys if something was wrong. Boys opened his door and answered briefly, but seemed uncertain of his location.

When Boys opened his door, the officers noticed a strong smell of alcohol about his person. They also noticed that his eyes were bloodshot and watery and that his speech was slurred. The officers asked him to get out of his car, and they testified that, at that time, he was no longer free to leave. They administered field sobriety tests to Boys, which, in their opinion, he failed. Subsequently, Boys was arrested and taken to the police station, where he was given a breath test.

The trial court granted Boys's motion to suppress, concluding that the officers did not have a reasonable and articulable suspicion that Boys was engaged in criminal activity when they first encountered him. It rejected Boys's other arguments, including his claim that the breath test result should have been suppressed because the police had failed to conduct a proper radio frequency interference survey. The state has appealed the trial court's judgment pursuant to R.C. 2945.67 and Crim.R. 12(J), contending in its sole assignment of error that the trial court erred in granting Boys's motion to suppress. We agree.

A seizure does not occur simply because a police officer approaches an individual and asks a few questions. An encounter that does not involve physical force or a show of authority does not necessarily implicate the Fourth Amendment. *Florida v. Bostick* (1991), 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389; *State v. Hummons* (Sept. 18, 1996), Hamilton App. No. C–950747, unreported, 1996 WL 526697. More specifically, when the police approach and question the occupants of a parked vehicle, their conduct does not constitute a seizure and does not require a reasonable and articulable suspicion of criminal activity. *State*

*v. Johnston* (1993), 85 Ohio App.3d 475, 620 N.E.2d 128; *State v. Robinson* (Sept. 8, 1997), Warren App. No. CA97–04–093, unreported, 1997 WL 563285.

The officers' approach of Boys's vehicle did not constitute a seizure and therefore did not have to be supported by a reasonable and articulable suspicion of criminal activity. However, the officers stated that Boys was not free to leave after they told him to get out of his car. At that time, they could point to specific, articulable facts, including Boys's appearance of being asleep at the wheel and disoriented, his bloodshot, watery eyes, and the odor of alcohol about his person, that gave them a reasonable suspicion that Boys had been driving under the influence of alcohol. Consequently, their seizure of Boys at that time to have him take field sobriety tests did not violate his Fourth Amendment rights. See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Johnston, supra.* Compare *State v. Campbell* (1990), 68 Ohio App.3d 688, 589 N.E.2d 452. Accordingly, we hold that the trial court erred in granting Boys's motion to suppress. We sustain the state's assignment of error.

Additionally, Boys submits his own assignment of error, in which he alleges that the trial court should have granted his motion to suppress on the basis that the police did not conduct a proper radio frequency interference survey. See App.R. 3(C) (one who intends to defend a judgment on a ground other than that relied on by the trial court but who does not seek to change the judgment or order need not file a notice of cross-appeal). He argues that three of the eight axes that former Ohio Adm.Code 3701–53–02 required to be tested extended outside the police department building into the driveway, where police cruisers equipped with mobile transmitting units traveled. Because police officers failed to test two of those axes, he claims that the radio frequency interference survey did not substantially comply with the regulations. We find that this assignment of error is not well taken.

The state bears the burden to demonstrate that the breath test administered to the defendant substantially complied with the regulations promulgated by the Department of Health as set forth in former Ohio Adm.Code 3701–53–02. *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902, syllabus. Once the state meets its burden, the burden shifts to the defendant to prove that he or she was prejudiced by any variation from the regulations. *State v. Miller* (Mar. 16, 1994), Hamilton App. Nos. C–930290 and C–930291, unreported, 1994 WL 79590.

The record shows that the breath analyzer had an internal detector that would shut the machine down if it detected any radio frequency interference. The senior operator who calibrated the machine every week testified that if any radio frequency interference was present, the detector aborted the test. He further

testified that when he calibrated the machine shortly before Boys's arrest, the detector was working properly.

Effective July 7, 1997, new Department of Health regulations became effective that eliminated the need for a radio interference survey. They now require that operability of an internal radio frequency detector be verified during the weekly instrument check. However, the offense in the present case occurred before those regulations became effective. Applying the former version, other appellate courts have held that even if the instrument has a radio frequency interference detector, substantial compliance with the regulations is still required. Some of these courts expressed concern that there was a lack of proof from which the trial court could determine the validity and accuracy of the machine's internal detector. *State v. Bennett* (1990), 66 Ohio App.3d 595, 597–598, 585 N.E.2d 897, 898–899; *Lakewood v. Shaw* (Dec. 20, 1995), Cuyahoga App. No. 67733, unreported, 1995 WL 753921. In contrast, one of the senior operators in the present case verified that the detector was working properly during his weekly instrument check. See *State v. Symes* (1994), 96 Ohio App.3d 156, 644 N.E.2d 729.

Further, in this case two police operators conducted a radio frequency survey of the breath analyzer as required by the regulations. Compare *Bennett, supra* (no survey conducted). They testified that they tested hand-held radios on all eight axes. The machine detected radio frequency interference and aborted the test when a radio came within six inches. Due to a misunderstanding of the instructions for testing mobile radios in automobiles, the police officers tested only the axis upon which a mobile radio could be placed closest to the breath analyzer. They parked a cruiser on that axis so that the radio was within six feet of the building. They determined that any radio beyond that distance would not result in interference.

In regard to radio frequency interference surveys, this court has stated:

"Where the error on the part of the officers performing the test goes to the reliability of the test, substantial compliance will not be found. Conversely, those errors going to the recording of results and not to the reliability of the test itself will be held to be substantial compliance. Further, testimony of surveying officers bolsters the test's reliability." *State v. Meyer* (Feb. 28, 1996), Hamilton App. Nos. C–950416, C–950417 and C–950418, unreported, 1996 WL 82693. See, also, *State v. Adams* (1992), 73 Ohio App.3d 735, 743–744, 598 N.E.2d 176, 181–182.

In our view, the test in this case was reliable. The instrument's internal detector was working. Hand-held radios could be brought to within six inches of the instrument before radio frequency interference affected its workings and the internal detector aborted the test. The police tested mobile radios within six feet

of the instrument and determined that there was no radio frequency interference at that point. No mobile radio in a cruiser could get closer to the building than six feet, and a radio transmitting outside that distance, including all points on the two untested axes, would not cause radio frequency interference. Consequently, we hold that the state substantially complied with the Department of Health regulations. See *State v. Freking* (Feb. 8, 1996), Franklin App. No. 95APC07–871, unreported, 1996 WL 52891; *Miller, supra.*

█ Because the state substantially complied with the regulations, Boys then bore the burden to demonstrate prejudice from any failure to strictly comply with the regulations, a burden that he did not meet. *Miller, supra.* Accordingly, the trial court correctly refused to grant the motion to suppress on that basis, and we overrule Boys's assignment of error.

For the reasons stated in our ruling on the state's only assignment of error, we reverse the judgment of the trial court and remand the case for further proceedings in accordance with the law.

*Judgment reversed*
*and cause remanded.*

MARIANNA BROWN BETTMAN, J., concurs.

PAINTER, J., concurs in part and dissents in part.

PAINTER, Judge, concurring in part and dissenting in part.

I agree with the majority that the motion to suppress should have been denied because Boys was not unconstitutionally seized under the Fourth Amendment. But I am convinced that the motion to suppress should have been granted as to the breath test results because the police did not conduct a proper radio frequency interference ("RFI") survey.

The state had the burden to show that the breath test administered to Boys substantially complied with the rules promulgated by the Ohio Department of Health, Ohio Adm.Code Chapter 3701–53. *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902, syllabus. Though strict compliance with the regulations is not always possible or necessary, the regulations must be adhered to where practical. Here, three of the eight RFI vectors extended outside the police station into the driveway, where police cruisers travel. The police cruisers are equipped with mobile radios that have transmitter antennas, which are capable of distorting the accuracy of breath-testing equipment. The police did not check for RFI on two of the three vectors that extended into the driveway, only surveying the axis closest to the breath analyzer.

The state argues that the breath analyzer has an internal RFI detector that aborts tests when RFI is present, and thus that the test administered to Boys was reliable. But breath analyzers with this type of internal mechanisms were not excepted from the RFI surveys mandated by former Ohio Adm.Code Chapter 3701–53, and thus they must comport with the regulations in effect at the time.[1] See, e.g., State v. East (May 17, 1996), Montgomery App. No. 15482, unreported, 1996 WL 257208; Lakewood v. Shaw (Dec. 20, 1995), Cuyahoga App. No. 67733, unreported, 1995 WL 753921; State v. Bennett (1990), 66 Ohio App.3d 595, 585 N.E.2d 897. The majority admits as much, but still gives undue weight to the internal mechanism's presence.

The state also argues that the regulations, as pertaining to mobile radios, mandate nothing more than surveying on one axis at the point closest to the breath analyzer, as was done in this case. But Appendix H to Ohio Adm.Code 3701–53–02 must be interpreted as mandating, where practical, the testing of all axes on which a mobile radio can be realistically positioned within thirty feet of the breath analyzer, for interference by mobile radios. Appendix H states: "Test mobile radio if transmitter antenna can be positioned within 30 feet from instrument. * * * With mobile radio positioned closest to instrument, transmit." Appendix H explicitly mandates the testing of hand-held radios on all eight vectors to determine whether interference is present. I am unaware of any reason why a mobile radio would not have to be tested on every axis that could draw interference when a hand-held unit must be. The majority also admits that there was a "misunderstanding of the instructions for testing mobile radios."

Though the state argues that "Officer Ward had determined that anything beyond that closest distance would not result in any interference," the officer was not shown to be an expert in electromagnetics or physics, and he presumably relied only on Appendix H itself in making this determination. See, e.g., East, supra. The majority readily admits that the police officers misunderstood the instructions in Appendix H, yet willingly accepts the officer's determination, which was apparently based on a misreading of these instructions, as evidence of substantial compliance. In fact, the officer testified: "It's been ruled that the closest axis that the mobile can be moved to is the one that you test, because anything outside of that axis is outside of the range." When defense counsel asked if he had any legal authority for the judge, the officer told him they would find it, if need be. I certainly cannot find it, and apparently the majority cannot find it either. The majority blindly gives weight to this testimony, stating that

---

1. As the majority explains, current regulations, effective July 7, 1997, have virtually eliminated RFI survey requirements. The operability of the internal RFI detection is to be verified during the weekly instrument check. Painter & Looker, Ohio Driving Under the Influence Law (1997) 108, Section 9.19.

the police officers "determined that any radio beyond that distance would not result in interference." Then, like the testifying officer, the majority asserts, without explanation, that a mobile radio broadcasting further than six feet from the building, which was the closest point to the building that a mobile radio could be positioned, would not cause RFI, but the majority has left out its reasoning. Apparently the majority is willing to rely on the officer's determination that it was so, without any proof or explanation.

I would hold that, where practical, all axes on which a mobile radio antenna can be realistically positioned within thirty feet of the breath analyzer must be tested for RFI. See State v. Freking (Feb. 8, 1996), Franklin App. No. 95APC07–871, unreported, 1996 WL 52891 (holding that officers substantially complied by testing mobile radio on every axis that a vehicle could cross within thirty feet of the breath-testing machine, though cruiser was not positioned at closest point to machine on one axis because of impracticality).

Here, the state has not demonstrated that the officers were unable to test all three axes that extended into the driveway for RFI. From the record, it is clear that testing these three axes was possible, but that the officers did not feel that it was necessary under the former regulations. The error undermines the reliability of the test, and therefore the officers did not substantially comply with the regulations. Because the state has not met its burden of showing that it substantially complied with the regulations, the issue of whether Boys showed that he was prejudiced by the breath test should not be reached. The cross-assignment should be sustained, so I respectfully dissent.