DECISION.
Defendant-appellant, Robert B. Kiefer, appeals a conviction for driving under the influence of alcohol pursuant to R.C.4511.19(A)(6). We find no merit in his two assignments of error, and we affirm his conviction.
In his first assignment of error, Kiefer contends that the trial court erred in entering a finding of guilty following his no-contest plea. He contends that no explanation of circumstances occurred after the plea as required by R.C. 2937.07. This assignment of error is not well taken.
R.C. 2937.07 states that "[a] plea to a misdemeanor offense of `no contest' or words of similar import shall constitute a stipulation that the judge or magistrate may make a finding of guilty or not guilty from the explanation of the circumstances of the offense." This statute confers a substantive right. Therefore, a no-contest plea may not be the basis for a finding of guilty without an explanation of circumstances. CuyahogaFalls v. Bowers (1984), 9 Ohio St.3d 148, 459 N.E.2d 532.
In this case, no explanation of circumstances occurred immediately after Kiefer entered his plea. But "[t]he statute does not prescribe a time or sequence within which the `explanation of circumstances' must take place." State v.Wendell (Jan. 14, 1991), 5th Dist. No. CA-8179. Therefore, the explanation of circumstances can occur during a hearing on a motion to suppress or other hearing. State v. Nichols, 5th Dist. No. 01 CA 016, 2002-Ohio-4048; State v. White (Sept. 14, 1994), 1st Dist. No. C-930916; Wendell, supra.
The trial court accepted Kiefer's plea immediately following the conclusion of the hearing on his motion to suppress. The evidence at that hearing constituted an explanation of circumstances sufficient to support the trial court's guilty finding. Consequently, the requirements of R.C. 2937.07 were met, and the trial court did not err in finding Kiefer guilty following his no-contest plea. We overrule Kiefer's first assignment of error.
In his second assignment of error, Kiefer contends that the trial court erred in overruling in part his motion to suppress. He argues that (1) the stop of his vehicle and his subsequent arrest violated his Fourth Amendment rights; (2) the arresting officer did not perform the field sobriety tests in strict compliance with the law and administrative rules; and (3) police officers failed to inform him of his rights pursuant to Mirandav. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, before soliciting incriminating statements from him. This assignment of error is not well taken.
A seizure does not occur simply because a police officer approaches an individual and asks a few questions. An encounter that does not involve physical force or a show of authority does not necessarily implicate the Fourth Amendment. Florida v.Bostick (1991), 501 U.S. 429, 111 S.Ct. 2382; State v. Boys
(1998), 128 Ohio App.3d 640, 716 N.E.2d 273. When the police approach and question the occupants of a stationary vehicle, their conduct does not constitute a seizure and does not require a reasonable and articulable suspicion of criminal activity.Boys, supra; State v. Neu (Mar. 3, 2000), 1st Dist. No. C-990552; State v. Green (Feb. 6, 1998), 11th Dist. No. 97-L-085.
In this case, Officer Mary Waurtz observed Kiefer's vehicle sitting in the right-turn lane on the exit ramp from Interstate 275 to Hamilton Avenue. It did not move for approximately fifteen seconds. She could not tell if the driver was sleeping. As she approached the vehicle, she noticed that its brake lights were on and the engine was running. She then saw Kiefer with his head down, his foot on the brake, and his eyes closed.
Waurtz knocked on the car window, and Kiefer awoke. At the officer's request, he rolled down his window and put the vehicle in park. She noticed that his eyes were watery, glassy, and bloodshot. She also smelled an odor of alcohol. Because she was out of her jurisdiction, Waurtz called another officer to the scene.
Waurtz's approach of Kiefer's vehicle did not constitute a seizure and therefore did not have to be supported by a reasonable and articulable suspicion of criminal activity. Kiefer's running vehicle was stopped in a lane of traffic and he appeared to be sleeping. Waurtz was justified in investigating further to see if Kiefer needed assistance. See Neu, supra.
Once Waurtz decided to detain Kiefer and called for another officer from within the jurisdiction, he was seized within the meaning of the Fourth Amendment. State v. Robinette (1997),80 Ohio St.3d 234, 685 N.E.2d 762; Neu, supra. At that time, Waurtz needed a reasonable and articulable suspicion that Kiefer was subject to seizure for violating the law. See Delaware v.Prouse (1979), 440 U.S. 648, 99 S.Ct. 1391. She must have been able to point to specific and articulable facts that, taken together with the rational inferences from those facts, reasonably warranted the seizure. Terry v. Ohio (1968),392 U.S. 1, 88 S.Ct. 1868; State v. Andrews (1991),57 Ohio St.3d 86, 565 N.E.2d 1271.
Waurtz could point to specific, articulable facts showing that Kiefer may have been violating the law. She found him asleep at the wheel, with his engine running and his foot on the brake. His eyes were glassy and bloodshot, and she smelled an odor of alcohol. Therefore, she had a reasonable suspicion that Kiefer was engaged in criminal activity, and she was justified in detaining Kiefer until an officer within his jurisdiction could respond.
Officer Doug Wise responded to Waurtz's radio dispatch. When he arrived on the scene, he asked his sergeant what he needed to do. Then, he approached Kiefer and asked him to get out of the vehicle. Kiefer staggered as he walked over to the sidewalk at Wise's request. As he talked to Kiefer, Wise noticed that his speech was slurred, that he had a poor attention span, and that he smelled of alcohol. He asked Kiefer if he had had anything to drink, and Kiefer responded that he had drunk six beers. Consequently, Wise had Kiefer perform field sobriety tests. When Kiefer failed to adequately perform the field sobriety tests, Wise arrested him and read him his Miranda rights. Kiefer subsequently took a breath test, which yielded a result of .228.
Kiefer argues that Wise himself did not have a reasonable and articulable suspicion that he was engaged in criminal activity. Therefore, Wise could not detain him to perform field sobriety tests. But a court can consider the collective knowledge of police officers in determining if reasonable suspicion to detain an individual exists. No requirement exists that the officers involved in a common investigation communicate all information to each other. See State v. Henderson (1990), 51 Ohio St.3d 54,554 N.E.2d 104; Hamilton v. Crowe (Nov. 9, 1992), 12th Dist. No. CA92-05-081.
Police may rely on information broadcast over the police radio to provide reasonable suspicion to make an investigative stop. But where the officer making an investigatory stop relies solely on a dispatch, the state must demonstrate that the facts precipitating the dispatch showed a reasonable suspicion of criminal activity. Maumee v. Weisner, 87 Ohio St.3d 295,1999-Ohio-68, 720 N.E.2d 507; State v. Holden (1985),23 Ohio App.3d 5, 490 N.E.2d 629; State v. Marsh (Sept. 3, 1999), 1st Dist. Nos. C-980788 and C-980789.
As we have previously indicated, Waurtz's observations, which resulted in her radio dispatch, provided a reasonable suspicion of criminal activity. Therefore, Wise, in reliance on her broadcast, did not violate Kiefer's Fourth Amendment rights in detaining him to determine if he was driving while under the influence of alcohol, regardless of what information was actually communicated to him.
Next, Kiefer contends that because the trial court excluded evidence about the field sobriety tests, Wise did not have probable cause to arrest him. The transcript of proceedings is garbled at the point where the court orally made its ruling on Kiefer's motion to suppress. But the handwritten judgment entries indicate that the trial court excluded evidence about two of the field sobriety tests.
In State v. Homan, 89 Ohio St.3d 421, 2000-Ohio-212,732 N.E.2d 952, superceded by statute as stated in State v.Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, the Ohio Supreme Court held that "for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedure." Nevertheless, the court went on to state that probable cause to arrest did not necessarily have to be based upon a suspect's poor performance on one or more of the tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even without evidence regarding field sobriety tests. Homan, supra;Cincinnati v. Wolfe, 1st Dist. Nos. C-010303 and C-010304, 2001-Ohio-3916. Further, the court later held that although the test results themselves may be inadmissible, a law enforcement officer may testify at trial about his or her observations made during the defendant's performance of nonscientific field sobriety tests, such as the walk-and-turn test. Schmitt, supra.
In this case, Wise testified that he had administered three field sobriety tests, and it appears that the trial court suppressed evidence related to two of them. Even if we do not consider the evidence relating to any of the field sobriety tests, the collective observations of Waurtz and Wise as to Kiefer's appearance and behavior gave them sufficient facts to warrant a prudent individual in believing that Kiefer had been operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19. Therefore, Wise had probable cause to arrest him. See State v. Heston (1972), 29 Ohio St.2d 152,280 N.E.2d 376; Henderson, supra; Wolfe, supra; Cincinnati v.Jacobs, 1st Dist. Nos. C-010279, C-010280, and C-010281, 2001-Ohio-4031.
Finally, Kiefer argues that Wise failed to advise Kiefer of hisMiranda rights before eliciting incriminating statements from him. He argues that because Wise responded to the scene with the express purpose of determining whether he was driving under the influence of alcohol, Wise should have advised him of his rights immediately. We disagree.
First, we note that the nonverbal results of the field sobriety tests and the breath test were not self-incriminating statements. Therefore, they would not have been rendered inadmissible by aMiranda violation. Henderson, supra. Further, roadside questioning of a motorist by police during a routine traffic stop does not constitute custodial interrogation that would trigger the protections of the Miranda rule. Berkemer v. McCarty
(1984), 468 U.S. 420, 104 S.Ct. 3138; State v. Stafford, 1st Dist. No. C-030297, 2004-Ohio-3893. Because Kiefer was not in custody and was not subject to custodial interrogation, Wise was not obligated to inform him of his Miranda rights prior to his actual arrest. Consequently, Kiefer's statements to Wise prior to his arrest were admissible into evidence.
Under the circumstances, we cannot hold that the trial court erred in overruling in part Kiefer's motion to suppress. Accordingly, we overrule his second assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Winkler, P.J., Doan and Gorman, JJ.