JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Mark Jordan, appeals from the judgment of the Rocky River Municipal Court denying his motion to suppress. For the reasons that follow, we affirm.
 {¶ 2} The record reflects that Jordan was charged with driving under the influence of alcohol, in violation of R.C.4511.19(A)(1). He filed a motion to suppress statements he made and other evidence, claiming, among other things, that the stop of his vehicle and subsequent arrest violated his Fourth Amendment rights.
 {¶ 3} The evidence presented at the hearing on the motion to suppress showed that at approximately 7:30 p.m. on December 28, 2002, Officer Tom Cummings, a police officer with the City of Westlake who was working off-duty as a security guard at a local bar/restaurant, called the City's police department to request assistance with two intoxicated, belligerent patrons. Westlake police officer Tammy O'Neill was dispatched to the restaurant in response to Cummings' request.
 {¶ 4} When she arrived at the restaurant, O'Neill spoke with Cummings and learned that restaurant management had asked Jordan and his friend to leave due to their extremely intoxicated state. Cummings had escorted the pair out of the restaurant and told them that they should not drive; however, the two men had entered a black Audi and turned the vehicle on in an apparent attempt to drive away.
 {¶ 5} Cummings directed O'Neill to the car the men had entered and followed her as she walked over to the car. She observed that the car's engine was running and both the headlights and taillights were on. She approached on the driver's side and shone her flashlight into the car, where she saw Jordan sitting upright in the driver's seat, with the passenger's head in his lap.
 {¶ 6} O'Neill ordered Jordan to turn off the engine and give her the keys. He looked at her with a blank expression but did not comply with her order. When O'Neill saw him reach for the center console gear shift, she immediately opened the driver's door and again ordered Jordan to turn off the engine, give her the keys and step out of the car. Jordan then complied with O'Neill's order.
 {¶ 7} According to O'Neill, when she opened the door, the passenger lifted his head. Both Jordan and his companion looked very confused and disoriented and it "appeared that [Jordan] did not have a clue as to what was going on." O'Neill further observed that as Jordan stepped out of the car, he was very unsteady and held onto the rooftop of the car to steady himself. O'Neill asked him if anyone had told him that he should not be driving. When Jordan responded that no one had told him not to drive, O'Neill immediately noticed an odor of alcohol about him. In response to O'Neill's further questioning, Jordan denied having anything to drink that evening or that he was on any medication.
 {¶ 8} O'Neill then advised Jordan that she would be conducting several field sobriety tests. As she explained the tests to him, however, he repeatedly interrupted her, asking her the same questions over and over. At one point, after she had explained the tests to him three times, Jordan looked at O'Neill, who was in full uniform, and asked, "Who are you?"
 {¶ 9} O'Neill testified that although Jordan recited the alphabet correctly, without singing, his speech was slurred. O'Neill then attempted to administer the one-legged stand test to him. Jordan interrupted O'Neill repeatedly as she tried to explain the test to him, but finally stated that he understood how to perform the test. When he lifted up his foot to try to balance himself, however, he immediately said, "I can't do that." O'Neill told Jordan there were other tests he could do to test his coordination, but he became belligerent and told her that he refused to take any other tests.
 {¶ 10} O'Neill testified that, in light of Jordan's unresponsiveness when she approached the car and asked him to turn off the engine, his unsteadiness when he exited the car, the repetitive nature of his questions, his belligerent behavior, the odor of alcohol about him and "the fact that he was, overall, just completely unresponsive and was not comprehending basic questions and things that were going on that evening," she arrested him. Apparently unhappy with this turn of events, when O'Neill gave Jordan his Miranda rights, he informed her that, "My lawyers will tear your ass up."
 {¶ 11} After the trial court denied his motion to suppress, Jordan withdrew his plea of not guilty and entered a plea of no contest to the charge with a stipulation to a finding of guilty. The trial court sentenced him to 180 days incarceration, 170 days suspended, and a $1000 fine, plus court costs, and two years probation.[1]
 {¶ 12} Jordan appeals from the trial court's order denying his motion to suppress, arguing that the stop of his vehicle and subsequent arrest violated his Fourth Amendment rights.
 {¶ 13} Our standard for review of a trial court's judgment regarding a motion to suppress was set forth by this court inState v. Curry (1994), 95 Ohio App.3d 93, as follows:
 {¶ 14} "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard." (Citations omitted.)
 {¶ 15} A police officer may make a brief, warrantless, investigatory stop of an individual where the officer reasonably suspects that the individual is or has been involved in criminal activity. Terry v. Ohio (1968), 392 U.S. 1. In assessing that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inference from those facts, reasonably warrant the intrusion. State v.Andrews (1991), 57 Ohio St.3d 86, citing Terry, supra. Whether an investigatory stop is reasonable depends upon the totality of the circumstances surrounding the incident. State v. Williams
(1990), 51 Ohio St.3d 58, 60.
 {¶ 16} Nevertheless, "not all personal intercourse between policemen and citizens involves `seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred." Terry, supra, 392 U.S. at 19, fn. 16. A seizure does not occur simply because a police officer approaches an individual and asks a few questions. "More pertinently, the mere approach and questioning of persons seated within parked vehicles does not constitute a seizure so as to require reasonable suspicion supported by specific and articulable facts." State v. Johnston (1993),85 Ohio App.3d 475, 478. See, also, State v. Kiefer, Hamilton App. No. C-03025, 2004-Ohio-5054; State v. Boys (1998),128 Ohio App.3d 640; State v. Robinson (Sept. 8, 1997), Warren App. No. CA907-04-093. Thus, O'Neill's initial approach to Jordan's car did not constitute a seizure and did not have to be supported by a reasonable and articulable suspicion of criminal activity.
 {¶ 17} However, once she opened the car door and told him to turn off the car and get out of the car, he was "seized" within the meaning of the Fourth Amendment and, therefore, at that time, O'Neill needed a reasonable and articulable suspicion that Jordan was subject to seizure for violating the law. To sustain the stop under the Fourth Amendment, she must have been able to point to specific and articulable facts that, taken together with the rational inferences from those facts, reasonably warranted the seizure. Terry, supra; Andrews, supra.
 {¶ 18} Here, O'Neill could, in fact, point to such specific, articulable facts showing that Jordan was violating the law. She knew, based upon the dispatch sending her to the restaurant/bar and her conversation with Officer Cummings upon arriving there, that Jordan was too intoxicated to drive. Contrary to Jordan's argument that O'Neill had no basis to seize him because he "was lawfully parked in a parking lot, had not committed any traffic violations, and never told her that he intended to drive away," the Supreme Court of Ohio has held that "a person in the driver's position in the front seat with the ignition key in his possession indicating either his actual or potential movement of the vehicle while under the influence of alcohol * * * can be found in violation of R.C. 4511.19(A)(1)." State v. Cleary
(1986), 22 Ohio St.3d 198, 199. Thus, the moment that Jordan, in his inebriated condition, entered his car and put the key in the ignition, he violated R.C. 4511.19(A)(1).
 {¶ 19} Jordan contends that the dispatch sending O'Neill to the restaurant was not sufficient to justify the stop, however, because the information supporting it came from Officer Cummings, who, according to Jordan, did not witness his unruly behavior in the bar, did not personally "cut him off" from having any more drinks, and did not personally escort him and his companion from the building. We are not persuaded.
 {¶ 20} "* * * [W]here an officer making an investigative stoprelies solely upon a dispatch, the State must demonstrate at the suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." Maumeev. Weisner (1999), 87 Ohio St.3d 295. (Emphasis in original.)
 {¶ 21} Here, the "facts precipitating the dispatch" came from a fellow City of Westlake police officer, whom O'Neill could assume to be reliable. Moreover, we disagree with Jordan's assertion that Cummings did not witness his drunken behavior. O'Neill testified that the dispatch advised her that Cummings needed assistance with "some intoxicated patrons, patrons that were giving him a hard time and wanting to drive." This testimony indicates that Cummings did indeed observe Jordan's belligerent, intoxicated behavior as he and his companion were escorted from the restaurant.
 {¶ 22} Moreover, it is apparent from the transcript of the suppression hearing that O'Neill did not rely solely upon the dispatch in stopping Jordan. When she arrived at the scene, she first conferred with Cummings. She then walked over to the car that Jordan had entered, shone her flashlight in the car, and observed Jordan sitting in the driver's seat, with the passenger's head in his lap. She also saw Jordan, after she had ordered him to turn off the car, instead reach for the gear shift in an apparent attempt to put the car into gear so he could drive it away. In light of these specific, articulable facts that Jordan was operating a motor vehicle while intoxicated, in violation of R.C. 4511.19(A)(1), O'Neill was justified in opening the car door and ordering him out of the car so she could fully investigate the circumstances.
 {¶ 23} Jordan also challenges his subsequent arrest, arguing there was no probable cause to arrest him. Again, we disagree.
 {¶ 24} Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonably prudent person in believing that an offense has been committed and that the defendant committed it. Beck v. Ohio (1964), 379 U.S. 89; State v.Timson (1974), 38 Ohio St.2d 122.
 {¶ 25} Prior to administering any field sobriety tests, Officer O'Neill knew that the management of the bar had refused to serve Jordan any more alcohol because of his intoxicated state, that he had been belligerent when he was escorted out of the restaurant, and that he had been advised not to drive because he was intoxicated. She observed that Jordan was in his car, however, with the engine running and the headlights and taillights on, apparently ready to drive away. She further observed that when Jordan got out of his car, he was unsteady on his feet and had to hold onto the car to steady himself, and she smelled an odor of alcohol about him. These facts and circumstances give rise to a reasonable suspicion of driving under the influence of alcohol sufficient to justify the administration of field sobriety tests.
 {¶ 26} While O'Neill was attempting to administer the field sobriety tests to Jordan, he repeatedly interrupted her and could not comprehend her basic instructions to him and, at one point, did not even seem to know that she was a police officer. Although he eventually completed the alphabet test, his words were slurred. Although he attempted to complete the one-legged stand test, he stated that he could not do it, and then refused to perform any other field sobriety tests.
 {¶ 27} The totality of these facts and circumstances was clearly sufficient to give rise to probable cause to arrest Jordan for operating a motor vehicle while under the influence of alcohol. Therefore, the trial court did not err in finding that Jordan's seizure and arrest were lawful and in denying his motion to suppress.
 {¶ 28} Appellant's assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and Rocco, J., Concur.
[1] On August 10, 2004, a probation violation complaint and capias was issued against Jordan for his failure to report to his probation officer and abstain from alcohol.