[Cite as *State v. Smith*, 2014-Ohio-2933.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 13 CO 10 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MARK R. SMITH, II | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:  Criminal Appeal from the East Liverpool Municipal Court of Columbiana County, Ohio
Case No. 12 TRC 2086

JUDGMENT:  Affirmed in part. Sentence Vacated. Reversed and Remanded.

APPEARANCES:

For Plaintiff-Appellee:  Atty. Robert Herron
Columbiana County Prosecutor
Atty. Timothy J. McNicol
Assistant Prosecuting Attorney
126 West 6th Street
East Liverpool, Ohio 43920

For Defendant-Appellant:  Atty. Dominic A. Frank
Betras, Kopp & Harshman, LLC
1717 Lisbon Street
East Liverpool, Ohio 43920

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated: June 27, 2014

WAITE, J.

{¶1} Appellant Mark R. Smith, II, is appealing the trial court's decision to overrule his motion to suppress. An East Liverpool policeman arrested Appellant after receiving an anonymous dispatch that there was a fight on Gardendale Street. The officer found Appellant sitting on his still warm motorcycle with engine and lights off, parked in the middle of Gardendale Street. When asked to show identification, Appellant revealed a holster with a loaded .25 caliber pistol. The officer arrested Appellant for carrying a concealed weapon. The officer noticed that Appellant had slurred speech and an odor of alcohol, and had admitted drinking. The officer conducted field sobriety tests at the police station, which Appellant failed. Appellant refused to take a blood test and was then charged with operating a vehicle while intoxicated (OVI). Appellant filed a motion to suppress all evidence resulting from the traffic stop and the ensuing investigation.

{¶2} Appellant attacks his conviction for three reasons. Appellant first argues that the police had no basis for making an investigatory stop because it was based solely on an anonymous tip. Next, Appellant argues that the field sobriety tests were not administered in substantial compliance with standard testing procedures. Finally, he claims that there was no probable cause to arrest him on OVI. While this record supports the investigatory stop and his OVI arrest, Appellant is correct that there is no evidence that the field sobriety tests were properly administered. In fact, the relevant evidence tends to show that they were not.

{¶3} Because Appellant has successfully argued that the results of the field sobriety test should have been suppressed, the court's decision regarding the motion

to suppress is reversed in part, and his conviction, sentence and plea agreement are vacated. The case is remanded for further proceedings.

Case History

**{¶4}** East Liverpool patrolman Greg Smith was dispatched in response to an anonymous tip about a fight near Gardendale and Smithfield Streets in East Liverpool. When the officer arrived, he saw no evidence that a fight was taking place, but did see two juveniles who were flagging him down. They told the officer that there was a man riding a motorcycle chasing a carload of people and that he was attempting to start a fight. (Tr., p. 6.) Officer Smith could hear and see a motorcycle coming toward him on Gardendale. (Tr., p. 6.) The motorcycle stopped about 100 yards in front of the officer. Smith continued down Gardendale and saw a man sitting on a motorcycle parked in the middle of the street. (Tr., p. 7.) Smith exited the patrol car and approached the motorcycle. Gardendale Street is a city street open to vehicular traffic.

**{¶5}** Upon reaching the motorcycle, Smith noted that the motorcycle engine was still warm. Smith also noted that Appellant had an odor of alcohol about him, glassy eyes, and that his speech was slurred. Among other things, Appellant said he was riding around looking for drug dealers and that he was going to take care of them. (Tr., p. 9.) When Appellant stood up and pulled his shirt up looking for his wallet, the officer saw a holster containing a weapon. (Tr., p. 10.) The officer arrested Appellant for carrying a concealed weapon. (Tr., p. 10; 7/25/12 Police Report, p. 3.) The officer drove Appellant to the police station and, when they arrived, administered three field sobriety tests. The officer performed the HGN, walk-

and-turn, and one-leg-stand tests. Appellant failed all three. A blood test was offered and refused.

{¶6} On July 25, 2012, Appellant was charged with OVI, R.C. 4511.19(A)(1)(a), and one felony concealed weapon charge. The concealed weapon charge is not part of this appeal. Appellant had three prior OVI convictions, two of them in the past six years. On October 11, 2012, Appellant filed a motion to suppress, alleging that the traffic stop was illegal, that his confession was the fruit of an unlawful search, that there was no probable cause for arrest, and that the field sobriety tests were not administered properly.

{¶7} The suppression hearing was held on December 5, 2012. Officer Smith was the only witness. The court overruled the motion to suppress in a judgment entry filed on December 6, 2012.

{¶8} On January 9, 2013, Appellant entered a written plea agreement to one OVI count, his third OVI in six years, a first degree misdemeanor. A change of plea hearing was held the same day. The court sentenced him to 180 days in jail, 105 days suspended, a driver's license suspension for five years, three years of intense probation, a fine of $1,050, and court costs. This appeal followed on February 7, 2013. The assignments of error will be treated out of order for ease of analysis.

Standard of Review of a Motion to Suppress

{¶9} A trial court's decision on a motion to suppress presents a mixed question of fact and law. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. During a suppression hearing the trial court is itself the trier of fact, and "is therefore in the best position to resolve factual questions and evaluate the credibility

of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). Thus, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside, supra*, ¶8. Accepting those facts as true, the appellate court conducts a *de novo* review as to whether the facts satisfy the applicable legal standards at issue in the appeal. *Id.*

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT OVERRULED HIS MOTION TO SUPPRESS AND FOUND THE OFFICER HAD REASONABLE ARTICULAR [SIC] SUSPICION TO EEFECTUATE [SIC] AN INVESTIGATORY STOP CONTRARY TO APPELLANT'S FOURTH AMENDMENT RIGHT.

**{¶10}** Appellant argues that Officer Smith relied solely on an anonymous tip to effectuate an investigatory stop of Appellant as he sat on his motorcycle in the middle of Gardendale Street in East Liverpool. Appellant argues that an uncorroborated anonymous tip cannot justify a warrantless search or seizure. In response the state points out that Officer Smith relied on more than an anonymous tip before he approached Appellant and asked for identification, and that the anonymous tip was corroborated in a number of ways. The state's assertion here is correct.

**{¶11}** Police may make an investigative stop of a vehicle when they have a "reasonable articulable suspicion" that criminal activity has occurred. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of

investigating possibl[e] criminal behavior * * *." *Id.* at 22. An officer is not required to have probable cause to arrest prior to making a *Terry* stop. *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Under *Terry*, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). In forming reasonable articulable suspicion, law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). A *Terry* investigatory stop "must be viewed in light of the totality of the surrounding circumstances." *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶12} An anonymous tip cannot support probable cause for a stop without corroboration. *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Stops based on such a tip require corroboration that establishes "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Florida v. J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).

{¶13} In this case, the officer had reasonable suspicion of criminal activity based on not one, but three reports of a fight or an attempt to fight on Gardendale Street. The details of the three reports were confirmed as the officer approached the

scene. The initial report was of a fight. When the officer approached the area, two juveniles gave the officer additional information that the person trying to start the fight was riding a black motorcycle. The officer saw and heard a black motorcycle in the area coming directly toward him, and within a few seconds the officer found Appellant illegally parked and sitting on his motorcycle in the middle of Gardendale Street. The engine of the motorcycle was still warm. These additional corroborating facts gave the officer a reasonable suspicion of criminal activity in order to justify stopping Appellant for questioning.

{¶14} Even if the officer did not have reasonable suspicion of criminal activity, he was permitted to ask Appellant for identification simply because Appellant was illegally parked in the middle of the street on his motorcycle. This was not based on an anonymous tip but on the officer's own observations. There is no Fourth Amendment seizure when an officer simply asks the occupant of a parked vehicle for identification. *State v. Phipps*, 11th Dist. No. 2006-P-0098, 2007-Ohio-3842, ¶19. In *State v. Johnston*, 85 Ohio App.3d 475, 620 N.E.2d 128 (4th Dist.1993), the appellate court held that "[l]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place. * * * More pertinently, the mere approach and questioning of persons seated within parked vehicles does not constitute a seizure so as to require reasonable suspicion supported by specific and articulable facts." (Citations omitted) *Id.* at 478; *see also, State v. Boys*, 128 Ohio App.3d 640, 642, 716 N.E.2d 273 (1st Dist.1998) ("when the police approach and question the occupants of a parked vehicle, their conduct does not constitute a seizure and does not require a reasonable and

articulable suspicion of criminal activity"). Appellant's response to the officer's request for identification led to the remaining issues surrounding the search and seizure in this case. And it was only after the request for identification that Appellant revealed his concealed weapon.

{¶15} The record reflects that the anonymous tip was corroborated, and that the officer had the authority to ask Appellant for identification because he was parked illegally in the middle of the street as he sat on his motorcycle. There is no evidence in this case that arises from an illegal traffic stop or unlawful detention. Therefore, Appellant's first assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NO. 3</u>

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT OVERRULED HIS MOTION TO SUPPRESS THE TESTIMONY/EVIDENCE OF THE ARRESTING OFFICER REGARDING THE RESULTS OF APPELLANT'S FIELD SOBRIETY TETS [SIC] AS SAME WHERE NOT ADMINISTERED IN SUBTANTIAL [SIC] COMPLIANCE WITH THE TESTING STANDARDS AND PROCEDURES.

{¶16} Appellant argues that the field sobriety tests were not performed correctly and should have been suppressed. Appellant argues that Officer Smith completely failed to administer field sobriety tests in accordance with the NHTSA standards, and for that reason, the test results should have been suppressed. Appellant argues that the officer should have conducted a medical assessment

before administering the HGN test, that the officer did not understand how to perform the walk-and-turn test, and that improper instructions were given for the one-leg-stand test.

{¶17} R.C. 4511.19(D)(4)(b) provides that evidence and testimony regarding the results of a field sobriety test may be presented "if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration[.]" *See also*, *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, at ¶9.

{¶18} We have held that "some evidence of the NHTSA or other testing standards is required to prove compliance with the administration of field sobriety tests. It is only logical that in order to prove substantial compliance with a given standard, there must be at minimum some evidence of the applicable standard for comparative purposes. Accordingly, where the suppression motion raises specific challenges to the field sobriety tests, the state must produce some evidence of the testing standards, be it through testimony or via introduction of the NHTSA or other similar manual or both." *State v. Bish*, 191 Ohio App.3d 661, 2010-Ohio-6604, 947 N.E.2d 257, ¶27. Once the issue is properly raised by the Appellant, the burden shifts to the state to prove by clear and convincing evidence that it substantially complied with NHTSA, or other similar standards, in administering the field sobriety tests. *Id.* at ¶24.

**{¶19}** The NHTSA testing manual was not submitted as evidence, used, or even mentioned by the state at the suppression hearing. Although Officer Smith testified that he had training in field sobriety tests at the Jefferson Community College Police Academy and AHAP, he failed to mention what standard he was using to conduct the tests. He simply described how he administered the tests. Appellant's counsel mentioned the NHTSA manual when trying to show that there were only eight clues to look for in the walk-and-turn test, but Smith was not sure how many clues were in the test, and he himself was looking for 12 clues. (Tr., p. 40.) It is not clear from the record what standard Smith was using, but whatever standard it was, it does not appear to have been the NHTSA standard. Since the record does not reveal through clear and convincing evidence what standard Officer Smith was using to conduct the walk-and-turn test, and because it clearly was not the NHTSA standard, this test result should have been suppressed.

**{¶20}** Similarly, with respect to the HGN (Horizontal Gaze Nystagmus) test, Smith admitted that he should have performed an assessment of Appellant's medical conditions prior to giving the test, and that he did not. "[T]he NHTSA instructs that an officer administering an HGN test should look for possible medical conditions that might compromise the test results." *State v. Robertson*, 10th Dist. No. 03AP-277, 2004-Ohio-556, ¶10. In other words, if the defendant had a brain injury or other type of medical condition that would prohibit the officer from administering the test or would affect the outcome of the test, the officer should be aware of that fact prior to administering the test. Smith testified that he just assumed Appellant would have told him of such a condition. (Tr., p. 39.) Smith also admitted that he should have

performed a medical assessment before administering the one-leg-stand test, and he did not. (Tr., p. 43.). Once again, since we do not know what standard Officer Smith was using, and because under any standard a medical assessment should have been performed, the HGN and one-leg-stand test results should have been suppressed.

**{¶21}** Without some reference point to determine whether or not Smith substantially complied with NHTSA or some other similar standard, it is difficult if not impossible to evaluate whether particular errors in the administration of field sobriety tests invalidate the tests. In a different situation in which the NHTSA standards are admitted as evidence and relied on by the state, the aforementioned errors might not invalidate a finding of substantial compliance with the standards. In this case, however, we have no choice but to declare the field sobriety tests invalid due to lack of clear and convincing evidence that the state substantially complied with the NHTSA standard. Appellant's third assignment of error is sustained.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT OVERRULED HIS MOTION TO SUPPRESS AND FOUND THE OFFICER HAD PROBALE [SIC] CAUSE TO ARREST APPELLANT FOR OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE (OVI).

**{¶22}** Appellant argues that the police did not have probable cause to arrest him for OVI. The legal standard for determining whether the police had probable

cause to arrest an individual for OVI is whether, "at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000); *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). "[T]he arresting officer must have observed not only the indicia of alcohol consumption, but also the existence of some reasonable indication of operation while under the influence of alcohol." *State v. Chelikowsky*, 4th Dist. No. 91 CA 27, 1992 WL 208899 (Aug. 18, 1992).

**{¶23}** Probable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in the belief that an offense has been committed. *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Huber v. O'Neil*, 66 Ohio St.2d 28, 30, 419 N.E.2d 10 (1981); *State v. Timson*, 38 Ohio St.2d 122, 311 N.E.2d 16 (1974), paragraph two of the syllabus. In determining whether a police officer had probable cause to arrest an individual for violating R.C. 4511.19, courts examine the totality of the circumstances. *State v. Medcalf*, 111 Ohio App.3d 142, 147, 675 N.E.2d 1268 (4th Dist.1996).

**{¶24}** Appellant contends that he was arrested for OVI on Gardendale Street, and that there was no probable cause to arrest him for OVI at that time. Appellant appears to misunderstand the relevant facts, here. The record reflects that Appellant was initially arrested on Gardendale Street for carrying a concealed weapon, and that while he was being detained on this CCW charge, he was further examined at the

police station regarding the possible OVI charge through the administration of field sobriety tests. Our first question is whether the officer had authority to administer the field sobriety tests after Appellant was legally detained and under arrest for a separate crime.

**{¶25}** We have adopted a non-comprehensive list of factors to consider in determining whether an officer had reasonable suspicion to administer field sobriety tests under the totality of the circumstances: (1) the time of day of the stop; (2) the location of the stop; (3) any indicia of erratic driving before the stop; (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes; (6) impairments of the suspect's ability to speak; (7) the odor of alcohol coming from the interior of the car or the suspect's person or breath; (8) the intensity of that odor as described by the officer; (10) any actions by the suspect after the stop that might indicate a lack of coordination; and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. *State v. Reed*, 7th Dist. No. 05BE31, 2006-Ohio-7075, ¶10-11, citing *State v. Evans*, 127 Ohio App.3d 56, 711 N.E.2d 761 (1998). All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably.

**{¶26}** The record reflects that, in this case, Appellant admitted he was operating his vehicle, was committing a traffic violation by sitting on his motorcycle with the engine off parked in the middle of a street open to two-way traffic, and had

slurred speech, glassy eyes and a noticeable odor of alcohol. These factors are sufficient to justify administering field sobriety tests.

**{¶27}** The second question is whether any aspect of the field sobriety tests may be relied upon to support probable cause to arrest for OVI when we have already determined that the results of the field sobriety tests should have been suppressed. In *Schmitt, supra*, the Ohio Supreme Court held that "that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated." *Schmitt* at ¶12. *Schmitt* reasoned that even if the results of field sobriety tests were inadmissible, the officer's actual observations both before and during the tests are relevant and admissible because they are "based upon his or her firsthand observation of the defendant's conduct and appearance." *Id.* at ¶15. *Schmitt* concluded that an officer may testify as to his or her observations regarding field sobriety tests, whether or not the test results themselves are deemed admissible, in support of probable cause or ultimate conviction for OVI. *Id.* at ¶11, 16.

**{¶28}** We have previously held that " 'probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these [field sobriety] tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where, as here, the test results must be excluded for lack of strict compliance." *State v. Phillips*, 7th Dist. No. 08-MO-6, 2010-Ohio-1547, ¶25, quoting *Homan, supra*, at 427, *superseded on other grounds by statute.*

**{¶29}** The record contains Officer Smith's testimony that he observed Appellant slurring his speech and rambling on about matters that did not make sense. Appellant also admitted to consuming alcohol, and the officer noticed a strong odor of alcohol and glassy eyes. He noted that Appellant could not walk a straight line even while using his arms for balance, could not put one foot in front of the other while walking or touch his heel to his toe, and swayed while trying to balance himself while holding his foot off the ground. Appellant was also found sitting on his motorcycle parked in the middle of a city street. The totality of the circumstances indicates that there was probable cause to arrest Appellant for OVI. Appellant's second assignment of error is overruled.

## Conclusion

**{¶30}** Appellant challenged the denial of his motion to suppress on three grounds. He first argued that the police officer had no basis to conduct a brief investigatory stop based solely on an anonymous tip. The record shows that there was more than a single anonymous tip that prompted the investigation, and the tip was corroborated by other evidence. Additionally, police are permitted to ask the driver of a parked vehicle for identification without violating the Fourth Amendment in these circumstances. Appellant also argued that the results of the field sobriety tests should be suppressed due to failure of the state to show substantial compliance with NHTSA standards. Appellant is correct and the test results will be suppressed. Finally, Appellant argues that there was no probable cause to arrest for OVI. The record taken as a whole indicates otherwise. Although the field sobriety test results are not admissible, the arresting officer's actual observations of Appellant both before

and during those tests can be used to establish probable cause. The record indicates that Appellant displayed many signs of intoxication both prior to and during the field sobriety tests sufficient to establish probable cause. Appellant's conviction, sentence and plea agreement are vacated. The December 6, 2012 Judgment Entry overruling the motion to suppress is reversed in part to reflect that the results of the field sobriety tests are suppressed and cannot be used as evidence. The case is remanded to the trial court for further proceedings consistent with this Opinion.

Donofrio, J., concurs.

DeGenaro, P.J., concurs.