[Cite as *State v. Logan*, 2011-Ohio-4124.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96190**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAKEEYAN LOGAN

DEFENDANT-APPELLANT

---

**JUDGMENT:**
**AFFIRMED**

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No.  CR-539792

**BEFORE:**  Keough, J., Boyle, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**  August 18, 2011

**ATTORNEYS FOR APPELLANT**

Iverson M. Jackson
420 Lakeside Place
323 West Lakeside Avenue
Cleveland, OH 44113

Steven M. Gaulding
75 Public Square
Suite 1111
Cleveland, OH 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

Margaret A. Troia
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

{¶ 1} This case came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1. Defendant-appellant, Jakeeyan Logan ("Logan"), appeals the trial court's decision denying his motion to suppress. For the reasons that follow, we affirm.

{¶ 2} In July 2010, Logan was charged with carrying a concealed weapon. Logan filed a motion to suppress, arguing that the officers lacked

reasonable suspicion to justify the warrantless stop. At the suppression hearing, the following evidence was presented.

**{¶ 3}** East Cleveland police officer John Donitzen testified that he was working undercover with Sergeant Randy Hicks on the night of July 14, 2010 and patrolling a six or seven block area around Carolyn, Superior, Hayden, and East 125th streets because it was "a problem area" for drug sales and robberies. They were dressed in plain clothes with police vests over their clothing and riding in an unmarked red pickup truck.

**{¶ 4}** At approximately 1:30 a.m. as they were parked at the Marathon gas station on the corner of Carolyn and Superior streets, the officers observed a male wearing jeans and a black hooded sweatshirt sitting on a bicycle across the street in a dimly lit area, facing their direction. The hood portion of the sweatshirt was pulled up onto the male's head and the strings were pulled tightly around his face, exposing only his eyes, nose, and mouth. Officer Donitzen testified that he found the male's appearance to be unusual for the weather because it was a relatively warm night. He also found the manner in which the hood was tied to be suspicious because a majority of the robbery reports they received from that area involved individuals who had pulled their sweatshirt hoods down over their faces in a similar fashion.

**{¶ 5}** Officer Donitzen testified that he and Sergeant Hicks activated their police lights and drove their unmarked police pickup truck toward

Logan with the purpose of stopping him. Logan pedaled his bicycle down the driveway toward the officers but started turning away from them when he reached the street. According to Officer Donitzen, he and Sergeant Hicks immediately exited the pickup truck and announced "police." Logan stopped peddling, rested his feet on the ground, stood up, and turned towards the officers. At that time, Officer Donitzen could see the back half of a black semi-automatic handgun sticking out of the side waistband of Logan's jeans. Officer Donitzen immediately yelled "gun," removed it from Logan's waistband, and placed him under arrest for carrying a concealed weapon. When Officer Donitzen removed the gun from Logan's waistband, Sergeant Hicks was standing directly in front of Logan. Logan testified that Sergeant Hicks grabbed his arm before Officer Donitzen yelled "gun."

{¶ 6} When questioned regarding what prompted the officers to stop Logan, Officer Donitzen responded that it was their intent to stop Logan because of what he was wearing and because he was in the shadows. "Just due to the fact that he was kind of lurking in the shadow[s] and what he was wearing and how he had presented himself was in correlation with my past training and experience of people that are going to rob somebody, so we were just making sure everything was okay, you know." When pressed, Officer Donitzen testified that the officers' specific reason for stopping Logan was because he was a "suspicious person" due to the time and place. According to

Officer Donitzen, Logan made no furtive movements as they were watching him and they did not see the gun in his waistband prior to approaching him.

{¶ 7} The trial court denied Logan's motion, concluding that the stop was consensual and the gun recovered from Logan's waistband was in plain view. Logan subsequently entered a plea of no contest to the charge and was found guilty by the court. He appeals, asserting in his sole assignment of error that the denial of his motion was improper because the undercover police officers lacked reasonable suspicion to justify the stop. In effect, Logan challenges the factual basis for the stop.

{¶ 8} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. In deciding a motion to suppress, the trial court assumes the role of trier of fact. Id. A reviewing court is bound to accept those findings of fact if they are supported by competent, credible evidence. Id. But with respect to the trial court's conclusion of law, we apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard. Id., citing *State v. McNamara* (1977), 124 Ohio App.3d 706, 707 N.E.2d 539.

{¶ 9} In this case, the trial court concluded that the interaction between the officers and Logan was consensual. A consensual encounter occurs when the police approach a person in a public place, engage the person

in conversation, and the person remains free to not answer or walk away. *State v. Jones*, 188 Ohio App.3d 628, 636, 2010-Ohio-2854, 936 N.E.2d 529, citing *Florida v. Royer* (1983), 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.E.2d 565. The person "'may not be detained even momentarily without reasonable, objective grounds for doing so.'" Id., quoting *Royer* at 498. A consensual encounter does not implicate the Fourth Amendment or trigger its protections. Id., citing *Florida v. Bostick* (1991), 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389.

{¶ 10} In this case, the officers were not engaging in a consensual encounter when they activated their police lights and announced "police" as they immediately exited their vehicle and approached Logan. Logan testified that Sergeant Hicks also stated "Stop. Don't move." No reasonable person in Logan's position would have felt free to leave because the activation of police lights and the announcement of "police," and possible police directives, are significant signs of authority that makes a police-citizen encounter considerably more intrusive than a simple consensual one. See *State v. Little*, Clark App. No. 09-CA-122, 2010-Ohio-2923, ¶9 (activation of overhead flashing lights by police officers in a marked police vehicle is not a consensual encounter under the Fourteenth Amendment). Understandably, the officers could have been activating their lights for their own safety because they were driving in an unmarked pickup truck and dressed in plain

clothes in the early morning hours. Nevertheless, we do not find that the stop was consensual.

{¶ 11} Instead, we find that this interaction between the officers and Logan was an investigatory stop, which constitutes a seizure for purposes of the Fourth Amendment. A police officer may stop or detain an individual without probable cause when the officer has reasonable suspicion based on specific, articulable facts that criminal activity is afoot. *Terry v. Ohio* (1968), 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889. Accordingly, an "investigatory stop does not violate the Fourth Amendment * * * if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.'" *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶35, quoting *United States v. Cortez* (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621.

{¶ 12} Reasonable suspicion entails some minimal level of objective justification, "that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause. *State v. Jones* (1990), 70 Ohio App.3d 554, 556-557, 591 N.E.2d 810, citing *Terry* at 27. Accordingly, "a police officer may not rely on good faith and inarticulate hunches to meet the *Terry* standard of reasonable suspicion." *Jones* at 557. Reasonable suspicion requires that the officer "point to

specific, articulable facts which, together with rational inferences from those facts, reasonably warrant the intrusion." Id., citing *Terry* at 21.

{¶ 13} "In making a determination of reasonable suspicion, the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." *State v. Taylor* (1995), 106 Ohio App.3d 741, 747-49, 667 N.E.2d 60. An appellate court views the propriety of a police officer's investigative stop in light of the totality of the surrounding circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus, approving and following *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus. "Assessing the need for a brief stop, 'the circumstances * * * before [the officer] are not to be dissected and viewed singly; rather they must be considered as a whole.'" *Freeman* at 295, quoting *United States v. Hall* (C.A.D.C.1976), 525 F.2d 857, 859. Officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu* (2002), 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740, quoting *Cortez* at 418.

{¶ 14} Based upon the examination of the totality of the circumstances, the officers in this case were justified to engage in a brief investigatory stop of Logan. The officers' experience and training, the distinct manner in which

Logan was positioned, the time of day, the location of the area known for drug activity and robberies, Logan's dress despite the temperature, and the manner in which his hood was affixed around his face and tied under his chin, coupled with reports regarding how robbery suspects in that area tied their hoods closed, justified a brief investigatory stop. Once the officers approached Logan, the gun in Logan's waistband appeared in plain view and warranted the arrest.

{¶ 15} "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be the most reasonable in light of facts known to the officer at the time." *Adams v. Williams* (1972), 407 U.S. 143, 145-46, 92 S.Ct. 1921, 32 L.Ed.2d 612. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." Id. at 145.

{¶ 16} Accordingly, we conclude that the officers, believing that criminal activity was afoot, had reasonable suspicion to justify the stop, and therefore did not abridge the protections guaranteed by the Fourth Amendment. Hence, the trial court did not err in denying the motion to suppress. Logan's assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR