[Cite as *State v. Carroll*, 2011-Ohio-5255.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 96212

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## SAMUEL CARROLL

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-534451

**BEFORE:** Boyle, P.J., Rocco, J., and Keough, J.

**RELEASED AND JOURNALIZED:** October 13, 2011

**ATTORNEY FOR APPELLANT**

Stephen L.   Miles
20800 Center Ridge Road
Suite 405
Rocky River, Ohio   44116


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Patrick J.   Lavelle
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


MARY J. BOYLE, P.J.:

**{¶ 1}**  Defendant-appellant, Samuel Carroll, appeals the trial court's judgment denying his motion to suppress.   He raises one assignment of error for our review: "The trial court erred when it denied [his] motion to suppress evidence."   Finding no merit to his appeal, we affirm.

Procedural History and Factual Background

{¶ 2}  Carroll was indicted on three counts: drug trafficking, in violation of R.C. 2925.03(A)(2); drug possession, in violation of R.C. 2925.22(A); and possessing criminal tools, in violation of R.C. 2923.24(A).   All three counts carried the same three forfeiture specifications (cell phone, scale, and money).   Carroll moved to suppress the evidence against him.   The following testimony was presented at the suppression hearing.

{¶ 3}  Two uniformed police officers arrested Darnell Patterson in the parking lot of the Togo Lounge.   The specifics of Patterson's arrest are not before us.   But a search of the vehicle that Patterson was in revealed 35 grams of cocaine in the center console. Patterson emphatically denied that the drugs were his, claiming they belonged to "Bobo."  Patterson told police that "Bobo" was inside the Togo Lounge, and that he was a black male who was wearing blue jeans, a dark jacket, and a dark hat.

{¶ 4}  The uniformed officers called their immediate supervisor, Sergeant Matt Putnam, for assistance.   Sergeant Putnam called for more assistance.   Lieutenant Jerome Barrow, Detective Samuel Cornell, and a couple of other officers,   answered the call for help.    Sergeant Putnam, Lieutenant Barrow, and Detective Cornell testified at the suppression hearing.

{¶ 5}  The officers went inside the Togo Lounge.   Although they were in plain clothes, they were clearly identified as police officers by their badges.   There were two female bartenders working and four customers sitting at the bar.   The officers testified that a man and a woman were sitting at the bar near the door; two other men were sitting

at the other end of the bar, one of whom matched the description of "Bobo." The officers approached the man, who was later identified as Carroll, and began talking to him.

{¶ 6} While Lieutenant Barrow was talking to "Bobo," Detective Cornell said that he saw Carroll move his hands toward his left pocket area. Detective Cornell immediately told Carroll to put his hands on the bar and leave them there. Carroll complied with the order at first, but about a minute later, Detective Cornell saw Carroll reach for his left side again. Detective Cornell testified that he thought that Carroll might have a weapon in his pocket or was possibly trying to dispose of contraband, so he told Carroll to put his hands on the bar a second time. Carroll briefly complied again, but then started to put his hands down his left side for a third time. At that point, Detective Cornell told Carroll to stand up and put his hands on the bar so he could search him.

{¶ 7} Detective Cornell conducted a pat-down search for weapons at that point. He said that Carroll appeared to be very nervous and was shaking when he searched him. Detective Cornell testified that he felt what he knew to be a plastic bag with three large lumps in Carroll's left pants pocket; the bag contained 55 grams of cocaine. Detective Cornell said the plastic bag was very close to the top of Carroll's pocket, and "based on [his] experience of patting a person down, it felt very consistent with drug activity."

Detective Cornell then found a pocket scale with white specks on it in Carroll's right pocket and $200 in another pocket.

{¶ 8} Carroll presented two witnesses on his behalf: Carolyn Wall, a bartender who worked at the Togo Lounge, and himself. Wall testified that 12 to 13 police officers came in the bar that night. They were looking around and searching the place. She heard the police asking people if they had their keys on them. She said that she had no idea why Carroll was arrested; she did not see him do anything.

{¶ 9} Carroll testified that two uniformed police officers came into the bar first, asking for "Bobo," and saying that "Bobo" was wearing a green jacket and green cap. Carroll said that the uniformed officers asked him how he got to the bar that night. Carroll told them that he had taken the bus and then walked the rest of the way. Carroll testified that the uniformed officers left the bar at that point. Then, about ten minutes later, Carroll said that other police officers came into the bar; they were wearing street clothes with "shields." Carroll said they began to ask him for his keys. He said he told them that he only had house keys, not car keys.

{¶ 10} Carroll further testified that while he was talking to the officers, telling them he did not have car keys, Detective Cornell asked him what he was doing and told him to put his hands on the bar. Carroll admitted that he took his hands off the bar after Detective Cornell told him not to, but said it was because another officer had asked him

for his keys and he was reaching for them. Carroll agreed on cross-examination that Detective Cornell had to tell him two times to put his hands back on the bar.

{¶ 11} At the close of the hearing, the trial court denied Carroll's motion to suppress. It found Carroll's testimony (that he received conflicting commands from two officers to keep his hands on the bar and to produce his keys) was not credible because "it is not realistic to believe two officers were in such close proximity giving conflicting commands," and even if they were, "defendant had the ability to state this to the officers."

{¶ 12} After the trial court denied Carroll's suppression motion, he pleaded no contest to the indictment. The trial court merged Carroll's drug trafficking and possession charges, and sentenced him to three years for drug trafficking and six months for possessing criminal tools, and ordered that they run concurrent with one another.

{¶ 13} It is from this judgment that Carroll appeals.

<u>Standard of Review</u>

{¶ 14} A motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *** Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *** Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of

the trial court, whether the facts satisfy the applicable legal standard." (Internal citations omitted.) Id.

## Investigative Search and Pat-Down

{¶ 15} Carroll argues that the police officers' investigative stop of him was illegal. He further maintains that even if the initial stop was supported by reasonable suspicion, the police officers lacked a justifiable belief that he was armed and dangerous, and therefore were not permitted to search him.

{¶ 16} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. It is well recognized that officers may briefly stop and detain an individual, without an arrest warrant and without probable cause, in order to investigate a reasonable and articulable suspicion of criminal activity. Id.; see, also, *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances" as "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. LeClair*, 12th Dist. No. CA2005-11-027,

2006-Ohio-4958, quoting *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044, syllabus, and *Bobo* at 179.

{¶ 17} Authority to conduct a pat-down search does not flow automatically from a lawful stop; a separate inquiry is required. *Terry*, 392 U.S. 1. The point of that inquiry is whether the officer was "justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer and others." Id. at 24. If that justification exists, the officer may reasonably conduct a pat-down search for weapons. "And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Id. at 27.

{¶ 18} Here, we agree with the trial court's factual findings and conclusions of law. The evidence presented at the hearing established that the police had information that a man, who was in the Togo Lounge, was the owner of a large amount of drugs that officers had just found in a vehicle in the parking lot of the lounge. Carroll matched the description given to police. They approached him to talk to him. They had sufficient "reasonable and articulable suspicion of criminal activity" to investigate Carroll without a warrant and without probable cause.

{¶ 19} Then, when Carroll ignored police orders to keep his hands on the bar and continued to place his hands near his left side, this behavior further justified the pat-down

search for weapons.    We conclude that Detective Cornell acted reasonably given Carroll's suspicious behavior.

{¶ 20} Accordingly, we conclude that the trial court did not err when it denied Carroll's motion to suppress.    Carroll's sole assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.    The defendant's conviction having been affirmed, any bail pending appeal is terminated.    Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

KENNETH A.    ROCCO, J., and
KATHLEEN ANN KEOUGH, J., CONCUR