[Cite as *State v. Banks*, 2012-Ohio-2304.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97299

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## WILLIE BANKS

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-545495

**BEFORE:** Jones, P.J., Cooney, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** May 24, 2012

**ATTORNEY FOR APPELLANT**

Kelly A. Gallagher
P.O. Box 306
Avon Lake, Ohio 44012


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Denise J. Salerno
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant, Willie Banks, appeals his conviction for drug trafficking, drug possession, endangering children, possessing criminal tools, and tampering with records. We affirm.

{¶2} In 2011, Banks was charged with one count each of drug trafficking with a juvenile specification, drug possession, possessing criminal tools, and tampering with records. He was also charged with three counts of endangering children. Banks filed a motion to suppress, which the trial court denied. The matter proceeded to a jury trial. The following pertinent evidence was presented at the motion hearing and trial.

{¶3} In November 2011, Detective Clinton Ovalle of the Cleveland Metropolitan Housing Authority ("CMHA") Police Department received a telephone call from a confidential reliable informant ("CRI") that a man, later identified as Banks, was parked in a van across from CMHA property. The CRI gave the detective the license plate number. Ovalle had previously received information from the same CRI regarding Banks.

{¶4} Detective Ovalle and another CMHA detective located the van and surveilled the area for a few minutes. They observed Banks getting in and out of his van and also observed another man performing repair work on the van. Detective Ovalle approached

Banks, who was getting out of the driver's seat of the van, and asked for his name. Banks identified himself as "Tyrone Banks" and, when asked, gave the detective a birth date and social security number. According to Detective Ovalle, he then did a "routine wants or warrants check" based on the information Banks gave him.

{¶5} The other detective went to the passenger side of the van, where Martina Jackson was sitting, holding a baby. There were two other young children in the van. The detective observed suspected drugs and a scale in plain view, sitting on top of an open diaper bag.

{¶6} The detectives advised Banks and Jackson of their rights. At first, Banks denied the drugs were his, but then admitted the drugs belonged to him and gave the police a written statement admitting he had bought the drugs for $2,200 and had $345 on him, $100 of which was drug money. Jackson confirmed that the drugs belonged to Banks and also made a written statement. The detectives recovered 51.25 grams of crack cocaine and a digital scale from the vehicle.

{¶7} Later that day, Detective Ovalle learned that Banks had given him an incorrect first name, birth date, and social security number. He spoke with Banks by phone, and Banks admitted he had lied to the detective because he was afraid he would be arrested on his outstanding warrants.

{¶8} Martina Jackson testified that she was with her three children and Banks that day. According to Jackson, they had only made one sale of drugs when the headlights went out on the van so they stopped to have it fixed. Jackson testified that Banks is the

father of two of the three children in the van. Jackson claimed the crack cocaine belonged to Banks but he always made her hold it. She admitted that she made a deal with the state to testify against Banks in exchange for pleading guilty to lesser charges. She denied being promised any particular recommended sentence by the state for doing so.

{¶9} The jury convicted Banks of all charges. The trial court sentenced him to a total of seven years in prison.

{¶10} Banks now appeals his convictions, raising the following assignments of error for our review:

I.   The trial court erred in denying the defendant's motion to suppress.

II.  The defendant's conviction for endangering children is against the manifest weight of the evidence.

## Motion to Suppress

{¶11} The Ohio Supreme Court has explained the standard of review for a motion to suppress as follows:

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted). *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71,   ¶ 8.

**{¶12}** Banks argues that the police lacked a reasonable and articulable suspicion of criminal activity to justify approaching and questioning him. The state maintains that the "stop" was a consensual encounter and, therefore, did not implicate the protections of the Fourth Amendment.

**{¶13}** The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). An investigative stop, or *Terry*[1] stop, is a common exception to the Fourth Amendment warrant requirement. It is well recognized that officers may briefly stop and detain an individual, without an arrest warrant and without probable cause, in order to investigate a reasonable and articulable suspicion of criminal activity. *State v. Carroll*, 8th Dist. No. 96212, 2011-Ohio-5255, ¶ 16, citing *Terry*.

> The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances as viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.

*State v. Bobo*, 37 Ohio St.3d 177, 179, 524 N.E.2d 489 (1988); *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), syllabus.

**{¶14}** The United States Supreme Court has held that

> not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*Terry* at 19.

{¶15} In *State v. Logan*, 8th Dist. No. 96190, 2011-Ohio-4124, this court explained that

> [a] consensual encounter occurs when the police approach a person in a public place, engage the person in conversation, and the person remains free to not answer or walk away. * * * A consensual encounter does not implicate the Fourth Amendment or trigger its protections.

*Id.* at ¶ 9, citing *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

{¶16} These same principles also apply to citizens in motor vehicles. Generally, a police officer's approach and questioning of the occupants of a parked vehicle does not constitute a seizure and does not require reasonable, articulable suspicion of criminal activity. *State v. Boys*, 128 Ohio App.3d 640, 642, 716 N.E.2d 273 (1st Dist. 1998).

{¶17} The record shows that Banks was parked in the parking lot of a vacant gas station having work done on his vehicle. The police received a tip from a CRI and went to the area. The police surveilled the area for several minutes and observed Banks getting in and out of the van several times and also saw another man working on the van. Detective Ovalle approached Banks on foot and asked him a few questions, which Banks answered. Once the other detective saw the suspected drugs and scale in plain view, he and his partner read Banks and Jackson their rights and continued to question them. Although a formal arrest is not necessary to trigger the protections of the Fourth Amendment, here, Banks is unable to show that his initial contact with police was

non-consensual.

{¶18} Banks further claims that the CMHA police were without authority to detain him off CMHA grounds. But both detectives testified that in addition to being CMHA police officers, they were sworn Cuyahoga County Sheriff's Deputies, which gave them the jurisdiction to enforce the laws in and around CMHA property. Detective Ovalle testified that the parking lot where they found Banks was within 300 feet from and across the street from CMHA property. On appeal, Banks cites no authority that challenges the detectives' testimony; therefore, we find no merit to his argument.

{¶19} Based upon the totality of the circumstances in this case, the detectives were engaging in a consensual encounter when they questioned Banks. Accordingly, the first assignment of error is overruled.

### Child Endangering Conviction

{¶20} In the second assignment of error, Banks argues that his third conviction for child endangering was against the manifest weight of the evidence. In short, Banks claims that he could not be convicted of one of the three counts of endangering children because the only evidence presented was that he was the father of only two of the children in the van.[2]

{¶21} In reviewing a challenge to the manifest weight of the evidence, the Ohio Supreme Court has held that

---

[2] Banks does not challenge his conviction on the other two counts of endangering children or on the other counts in the indictment.

[t]he question to be answered is whether there is substantial evidence upon which [the trier-of-fact] could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the [triers-of-fact] clearly lost [their] way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

(Internal quotes and citations omitted.) *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81.   This court must remain mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the fact-finder to assess.   *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶22} R.C. 2919.22(A) provides that

[n]o person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.

Banks concedes he is the father of two of the children found in the car.   Jackson is the mother of the third child, but that child has a different father.   A jury, however, could have found beyond a reasonable doubt that the third child was in Banks's custody and care at the time of the incident.   Control over a child alone is sufficient to satisfy R.C. 2919.22(A).   *State v. Reed*, 11th Dist. No. 89-L-14-130, 1991 WL 95227 (May 31, 1991).   As *Reed* recognizes, the Committee comment following R.C. 2919.22 states that "in addition to the natural parents of the child, the first part of the section also covers guardians and custodians, persons having temporary control of a child and persons

standing in the place of the parents." In addition, this court has previously found that even a babysitter acts "in loco parentis." *State v. Amerson*, 8th Dist. No. 78235, 2001 WL 755902 (July 5, 2001).

**{¶23}** Based on these facts, the conviction for child endangering was not against the manifest weight of the evidence. The second assignment of error is overruled.

**{¶24}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., and
MARY EILEEN KILBANE, J., CONCUR