[Cite as *State v. Garcia*, 2012-Ohio-5066.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97912**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## SAN PEDRO GARCIA

DEFENDANT-APPELLANT

## JUDGMENT:
## REVERSED AND VACATED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-537986

**BEFORE:** Sweeney, J., Blackmon, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** November 1, 2012

**ATTORNEY   FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Alison Foy
        Milko Cecez
Assistant County Prosecutors
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, J.:

{¶1}  Defendant-appellant San Pedro Garcia ("defendant") appeals the trial court's denial of his motion to suppress the evidence against him and his subsequent conviction for carrying a concealed weapon. After reviewing the facts of the case and pertinent law, we reverse the court's judgment and vacate defendant's conviction and sentence.

{¶2}  On May 25, 2010, defendant was on a bicycle talking to a friend of his who was in a car that was stopped in the middle of the street near the corner of W. 50th and Clark Avenue in Cleveland. Police Officers Mark Maguth and Timothy Maffo-Judd, who were on patrol, saw the two men, turned their marked police vehicle around, and approached the scene. Defendant began to ride away from the driver's side window of the stopped car as he saw the police approach. Officer Maguth told defendant to stop and then asked him what was going on. As they were talking, defendant kept reaching for the waistband of his pants.

{¶3}  Officer Maguth exited the zone car and informed defendant that he was going to search him for weapons. As he was conducting the pat-down, Officer Maguth asked defendant if he had any weapons, and defendant replied that he had a gun. Officer Maguth found a loaded .25-caliber handgun with an extra magazine concealed in defendant's waistband.

**{¶4}** On June 15, 2010, defendant was indicted for carrying a concealed weapon in violation of R.C. 2923.12(A)(2). After a hearing, the court denied defendant's motion to suppress, and the matter proceeded to a bench trial. The court found defendant guilty as indicted, and on January 18, 2012, sentenced him to one year of community control sanctions.

**{¶5}** Defendant appeals and raises three assignments of error for our review.

I.

The trial court erred in denying Appellant's motion to suppress.

> Appellate review of a trial court's ruling on a motion to suppress presents mixed questions of law and fact. An appellate court is to accept the trial court's factual findings unless they are clearly erroneous. We are, therefore, required to accept the factual determinations of a trial court if they are supported by competent and credible evidence. The application of the law to those facts, however, is subject to de novo review. (Internal citations omitted.)

*State v. Polk*, 8th Dist. No. 84361, 2005-Ohio-774, ¶ 2.

**{¶6}** Warrantless searches are presumptively unconstitutional, subject to a limited number of specific exceptions. One scenario that does not trigger Fourth Amendment protection is a citizen's consensual encounter with the police. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). "A consensual encounter occurs when the police approach a person in a public place, engage the person in conversation, and the person remains free to not answer or walk away." *State v. Logan*, 8th Dist. No. 96190, 2011-Ohio-4124, ¶ 9. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances

surrounding the incident, a reasonable person would have believed that he was not free to leave." *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

**{¶7}** In *California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the United States Supreme Court explained that

> *Mendenhall* establishes that the test for existence of a "show of authority" is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person.

**{¶8}** There are several factors that may cause a consensual encounter to become a seizure, thus implicating the Fourth Amendment. These factors include,

> the threatening presence of several officers, the display of a weapon by an officer, some physical touching * * * of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Mendenhall* at 554.

**{¶9}** A second exception to the rule requiring warrants is found in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which stands for the proposition that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibl[e] criminal behavior * * *." *Id.* at 22. To warrant a *Terry* investigatory stop, the police "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. The Ohio Supreme Court additionally stated that an investigatory stop "must be viewed in light of the totality of the surrounding circumstances." *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980).

**{¶10}** *Terry* also held that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous" the officer may conduct a protective search for weapons. *Terry* at 24. *See also State v. Williams*, 51 Ohio St.3d 58, 554 N.E.2d 108 (1990).

**{¶11}** In the instant case, the following testimony was presented at defendant's suppression hearing:

**{¶12}** Officer Maguth testified that he has "just over three years" experience as a basic patrol officer with the Cleveland Police Department, and he has made approximately 40 - 50 drug related arrests. Officer Maguth testified that he and his partner Officer Maffo-Judd were patrolling the area of W. 50th and Clark around midnight on May 25, 2010. The officers have made drug arrests in this area before.

**{¶13}** From approximately 300 yards away, they observed a man, later identified as defendant, on a bicycle leaning into the driver's side window of a car that was stopped in the middle of W. 50th Street. Officer Maguth and his partner turned their vehicle around and drove toward the scene. When defendant saw the police car approaching, he "started riding from the street towards the sidewalk." Asked if he ever observed drug transactions occurring when a person leans into the driver's side of a vehicle, Officer Maguth responded, "Yes."

**{¶14}** Both officers remained in their zone car, and Officer Maguth said to defendant, "Stop." Defendant complied and Officer Maguth asked him, "What's going on?" Defendant answered that he found a bike in the middle of the intersection and, as he was clearing it out of the way, he stopped to talk to a friend who happened to be

driving by. Defendant also told the police that he lived in and owned the four-unit apartment building on the corner of W. 50th and Clark, the front door of which is approximately 10-15 feet from where defendant was stopped.

{¶15} Officer Maguth testified that, as they were talking, defendant "kept reaching into his waistband with his arm." Officer Maguth asked defendant why he was reaching for his waist. Defendant did not respond. Officer Maguth stepped out of the police car and said to defendant, "I'm going to pat you down for weapons." Officer Maguth asked defendant if he had any weapons, and defendant responded that he had a gun. During this *Terry* pat, a loaded gun with an additional magazine was found holstered in a cell phone case that was clipped onto the right side of defendant's waistband under his shirt. Officer Maguth testified that defendant's gun was not in plain view prior to the search. Asked why he patted defendant down, Officer Maguth testified as follows: "For my safety and my partner's safety just strictly for weapons."

{¶16} On cross-examination, Officer Maguth testified that when he and his partner first approached the scene, the defendant had not made any furtive movements and no crime had been committed.

{¶17} Officer Maffo-Judd testified that he has been a patrol officer for the Cleveland Police Department for almost four years. Officer Maffo-Judd was on patrol with his partner Officer Maguth on May 25, 2010, in the area of W. 50th and Clark, when he "observed a male on a bicycle having a conversation with someone in the middle of the street in a car." Officer Maffo-Judd thought this was "fishy," and they approached the scene. Defendant, who was on the bicycle, came towards them. As the police were

questioning him, defendant "started reaching for his waistband * * * or his pockets." While this transpired, both officers stayed inside the police car.

{¶18} According to Officer Maffo-Judd, defendant's gestures at this point were "pretty suspect," and Officer Maguth exited the police vehicle to pat defendant down for weapons. When Officer Maguth asked defendant if he had any weapons, defendant stated that he had a gun. Officer Maffo-Judd did not observe the gun on defendant prior to it being discovered during the pat-down.

{¶19} On review, we first analyze whether the initial interaction between defendant and the police was a consensual encounter or a *Terry* investigatory stop. In its July 25, 2011 journal entry denying defendant's motion to suppress, the court stated the following in pertinent part:

> While both officers were suspicious that some improper activity may have been taking place, neither testified to seeing any illicit activity. The officers decided to turn around and investigate what was happening to cause the car and the bicycle to be stopped in the middle of the street at midnight. When they initially approached the defendant, Officer Maguth did not get out of the zone car but simply asked some questions of the defendant. * * * The officers here never testified to seeing any drug transaction but simply stopped to investigate an unusual sight, a person on a bicycle in the middle of the street next to a stopped car around midnight.

{¶20} Under our standard of review, we are to accept the court's factual findings if they are supported by competent and credible evidence in the record. The court's finding that "Officer Maguth * * * simply asked some questions of the defendant" omits an essential part of what transpired.

{¶21} The following colloquy occurred during Officer Maguth's direct examination:

Q: Your partner drove your car around then you approached the vehicle and the male on the bicycle?

A: Yes, we conducted — yes, a stop.

* * *

Q: And again, based on your training and experience, after making this observation and approaching the male on the bicycle and the stopped car, what did you do?

A: That's when I had the male on the bicycle stopped. I asked him to stop.

**{¶22}** Additionally, the following colloquy occurred during the officer's cross-examination:

Q: Well, you asked [defendant] to stop. Right?

A: Mm-hmm.

Q: And he stopped?

A: Yep.

Q: Right?

A: Yep.

Q: And you asked him to stop. You wanted him to stop. Right?

A: Yeah. I wanted to talk to him.

Q: And when you asked — when you're in your full uniform and you ask someone to stop, you expect them to comply. Right?

A: Normally.

**{¶23}** Officer Maffo-Judd testified that he did not recall whether his partner asked defendant to stop, but stated that it was "very possible." Additionally, Officer

Maffo-Judd was asked the following question: "If you asked someone to stop you expect them to stop. Correct?" Officer Maffo-Judd replied, "Yes. Yes, sir."

{¶24} In analyzing the circumstances of this case under *Mendenhall*, we find the following: Two uniformed police officers in a marked zone car turned their vehicle around to approach defendant. From the police vehicle, one of the officers told or asked defendant to stop. Both officers testified that when they ask someone to stop, they expect that person to stop.

{¶25} We are being asked to categorize this scenario as either an "encounter" or a "stop." It would be somewhat ironic to conclude that in using the word "stop," the police were not conducting a stop, but rather were engaging defendant in a consensual encounter.

{¶26} We conclude that the circumstances of the instant case would convey to a reasonable person a "show of authority" such that he or she was being ordered to restrict his or her movement. Therefore, the initial interaction between defendant and the police was a seizure, which implicated the Fourth Amendment.

{¶27} We turn to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to determine if the investigatory stop of defendant was warranted. Reasonable suspicion to conduct a *Terry* stop requires more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id.* at 27.

{¶28} In the instant case, Officer Maguth gave no explanation as to why he and Officer Maffo-Judd turned around to approach defendant, other than testifying that, in his training and experience, drug transactions have occurred when people lean into the

windows of vehicles. Officer Maffo-Judd testified that the reason they turned around to approach defendant was that the situation looked "kind of fishy." Both officers testified that defendant did not make any furtive gestures before being stopped, nor did he commit any criminal activity before they approached the scene.

{¶29} In *State v. Boulis*, 8th Dist. No. 86885, 2006-Ohio-3693, ¶ 20, this court affirmed the trial court's granting the defendant's motion to suppress evidence under the following facts:

> The record fails to indicate that the stop of Boulis was supported by the specific, articulable facts necessary to perform an investigative stop under *Terry*. First, Officer Havranek admitted that observing someone driving an SUV who stops to speak to someone riding a bicycle is benign. Second, although Officer Havranek testified that they observed what they believed to be a drug transaction, he * * * could not state with specificity or certainty that he observed drugs and money being exchanged between Boulis and the man on the bicycle. Based on these facts, we conclude that the officers initiated the stop on the mere hunch that a drug transaction had taken place.

{¶30} This court reached a similar conclusion in *State v. Coleman*, 8th Dist. No. 93451, 2009-Ohio-6471, where the denial of a motion to suppress was reversed. The police officer in Coleman testified that "the only reason [the defendant] was stopped is that they saw two men leaning into his car," and this court concluded that this was not sufficient to justify a *Terry* stop. *Id.* at ¶ 8. *See also State v. Pettegrew*, 8th Dist. No. 91816, 2009-Ohio-4981 (no reasonable suspicion of criminal activity when the defendant and a man made a hand-to-hand transaction through the driver's side window of a vehicle, but the police officer testified that he "could not see what was exchanged, and said it 'could have been anything'").

**{¶31}** The State argues that the facts of the case at hand are "eerily similar" to the facts in *State v. Ligon*, 8th Dist. No. 81987, 2003-Ohio-3257, ¶ 27, where this court held that "trial counsel's failure to file a motion to suppress does not constitute ineffective assistance of counsel." However, we find *Ligon* distinguishable from the case at hand. The issue in *Ligon* was defense counsel's effectiveness. No suppression hearing was held, and the analysis was based on trial testimony, which showed that when the police approached "a car stopped in the middle of the street with two males leaning inside of it * * * the two males fled on foot, and the driver immediately turned the vehicle into a driveway." *Id.* at ¶ 3. Here defendant did not flee when he saw the police; on the contrary, he stopped when told to do so by Officer Maguth.

**{¶32}** In *State v. Arrington*, 64 Ohio App.3d 654, 657-658, 582 N.E.2d 649 (8th Dist. 1990), this court held the following:

> It is not illegal for four males to assemble by a car and engage the occupant in conversation. * * * It is not unreasonable for a young * * * male living in a neighborhood with drug sales and liable to be stopped to run when approached by a police car whose officers assume a drug sale whenever someone speaks to someone in a car and believe the mere act of congregating justified a seizure.
>
> This is not to deny the reality the officers face in combating the drug sellers. But although drugs are often sold to occupants of cars by people who gather near them it is just as likely that those merely by a car are engaged in an innocent activity as it is that they are engaged in a illegal one. The actions of the residents of drug "supermarkets" are nonetheless protected even if they coincidentally mirror those of the sellers.

**{¶33}** Upon review, we find that the facts of the case at hand do not create a reasonable belief of suspicious behavior justifying police intrusion. Thus, the weapon discovered during defendant's pat-down is inadmissible because it is fruit of the

poisonous tree.   The court erred in denying defendant's motion to suppress, and his first assignment of error is sustained.   Pursuant to App.R. 12(A)(1)(c), defendant's second and third assignments of error are moot.

## II.

The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence to sustain a conviction.

## III.

Appellant's conviction * * * [is] against the manifest weight of the evidence.

**{¶34}** Judgment reversed and defendant's conviction and sentence are vacated. Case remanded for proceedings consistent with this opinion.

It is, therefore, considered that said appellant recover of said appellee his costs herein.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, JUDGE

PATRICIA ANN BLACKMON, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR