[Cite as *State v. Goodloe*, 2013-Ohio-4934.]

# IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

State of Ohio,                                     :

      Plaintiff-Appellant,            :

                                No. 13AP-141

v.                                                :            (C.P.C. No. 12CR-08-4061)

Dwight D. Goodloe, Jr.,                            :          (REGULAR CALENDAR)

      Defendant-Appellee.             :

---

## D E C I S I O N

### Rendered on November 7, 2013

---

*Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellant.

*Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellee.

---

APPEAL from the Franklin County Court of Common Pleas

KLATT, P.J.

{¶ 1} Plaintiff-appellant, the State of Ohio, appeals from a judgment of the Franklin County Court of Common Pleas that granted a motion to suppress filed by defendant-appellee, Dwight D. Goodloe, Jr. For the following reasons, we affirm that judgment.

## I. Factual and Procedural Background

{¶ 2} On the afternoon of June 30, 2012, Columbus Police Officer Zachary Weekly and his partner were in a marked police car patrolling the east side of Columbus, Ohio. Officer Weekly observed Goodloe at the corner of an intersection. He noticed that Goodloe looked like he wanted to cross the street but hesitated when he saw the officers'

car.  Officer Weekly also noticed bulges on the right and left side of Goodloe's pants.  The officers drove past Goodloe and saw him cross the street and walk through a parking lot.  The officers turned their car around and pulled up close to Goodloe as he walked on a sidewalk.  Officer Weekly could tell that one of the bulges was a cell phone but he still could not identify the other bulge.  The officers parked their car on the street next to Goodloe, got out and approached him on the sidewalk.  Officer Weekly walked up to the side of Goodloe and his partner stood on the sidewalk in front of him.  Neither officer drew their weapon.  Officer Weekly asked Goodloe if he knew of anyone looking into cars in the parking lot he had just crossed through.  Goodloe replied that he did not.  Officer Weekly then asked him if he had any firearms.  Goodloe did not verbally respond, but sighed and dropped his shoulders and head down.  Officer Weekly took this as an admission that he had a firearm on him and immediately reached for the bulge on Goodloe's right side.  He felt a gun and took it from Goodloe.

{¶ 3}  As a result, a Franklin County Grand Jury indicted Goodloe with a single count of carrying a concealed weapon in violation of R.C. 2923.12.  Goodloe entered a not guilty plea to the charge.  Before trial, Goodloe moved to suppress the gun discovered during the encounter with the officers.  He claimed that the officers violated his Fourth Amendment right to be free from unreasonable searches and seizures.  At a hearing on the motion, Officer Weekly testified to the above version of events.  The trial court granted Goodloe's motion to suppress, concluding that the initial encounter when the officers got out of their car and approached Goodloe on the sidewalk was "a sufficiently strong showing of police authority to convert a consensual encounter into a seizure without the reasonable suspicion necessary for a *Terry* stop.  At that point, they didn't have enough."  (Tr. 54.)  The trial court specifically noted that an important fact in that conclusion was that one of the officers blocked Goodloe's route on the sidewalk and that the other was also within a foot or two of Goodloe.

## II. The Appeal

{¶ 4}  The state, pursuant to R.C. 2945.67(A) and Crim.R. 12(K), appeals the trial court's ruling and assigns the following error:

> The trial court erred when it granted defendant's motion to suppress.

## A. Standard of Review

{¶ 5}   " 'Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " (Citations omitted.)  *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  The state does not contest the trial court's factual findings.  Instead, the state disagrees with the trial court's legal conclusion that the initial stop was not a consensual encounter but an investigatory detention not supported by reasonable suspicion.

## B. Encounters between Police and the Public

{¶ 6}   The Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, as well as Ohio Constitution, Article I, Section 14, prohibit the government from conducting warrantless searches and seizures, rendering them per se unreasonable unless an exception applies.  *State v. Mendoza,* 10th Dist. No. 08AP-645, 2009-Ohio-1182, ¶ 11, citing *Katz v. United States*, 389 U.S. 347, 357 (1967).  Even so, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred" within the meaning of the Fourth Amendment.  *Terry v. Ohio*, 392 U.S. 1, 19, fn. 16 (1968); *Brendlin v. California*, 551 U.S. 249, 254 (2007).

{¶ 7}   The United States Supreme Court recognizes three categories of police-citizen interactions: (1) a consensual encounter, which requires no objective justification, *see Florida v. Bostick*, 501 U.S. 429, 434 (1991); (2) a brief investigatory stop or detention, which must be supported by reasonable suspicion of criminal activity, *see Terry*; and (3) a full-scale arrest, which must be supported by probable cause.  *See Brown v. Illinois*, 422 U.S. 590 (1975).  The dispute in this case concerns the line demarcating a consensual encounter and an investigatory *Terry* stop.

{¶ 8}    A police officer may lawfully initiate a consensual encounter without probable cause or a reasonable, articulable suspicion that an individual is currently engaged in criminal activity or is about to engage in such conduct.  *United States v. Mendenhall*, 446 U.S. 544, 556 (1980).  A consensual encounter occurs when a police officer approaches a person in a public place, engages the person in conversation or requests information, and the person remains free not to answer and walk away.  *Id.* at 553.  An officer's request to examine a person's identification does not make an encounter nonconsensual, nor does the officer's neglect to inform the person that he is free to walk away.  *Bostick*.  The Fourth Amendment guarantees are not implicated in such an encounter unless the officer has, by either physical force or show of authority, restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter.  *Mendenhall* at 554.  Once a person's liberty has been so restrained, the encounter loses its consensual nature and falls into one of the other two Supreme Court categories.  *State v. Taylor*, 106 Ohio App.3d 741, 748 (2d Dist.1995); *State v. Guinn*, 10th Dist. No. 99AP-630 (June 1, 2000) (memorandum decision).

{¶ 9}    The second type of encounter is an investigatory stop.  An investigatory stop is more intrusive than a consensual encounter but less intrusive than a formal custodial arrest.  An officer may perform an investigatory stop without violating the Fourth Amendment as long as the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  *Terry* at 21.  An investigatory stop is limited in duration and purpose and may last only as long as it takes the officer to confirm or to dispel his suspicions that an individual is, or is about to be, engaged in criminal activity.  *Id.* at 16.   An investigatory stop constitutes a seizure for purposes of the Fourth Amendment.  *Id.*

{¶ 10}   A person is seized under this category when, in view of the totality of the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave.  *Mendenhall* at 553; *Terry* at 19.  "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about

his business.' " *Bostick* at 437.  Factors suggesting that a person has been seized include: a threatening presence of several officers; the display of a weapon by an officer; some physical touching of the person; the use of language or tone of voice indicating that compliance with the officer's request might be compelled; approaching the person in a nonpublic place; and blocking the person's path.  *Mendenhall* at 554.

{¶ 11}   Here, the state contends that the officers engaged in a consensual encounter with Goodloe.  Goodloe contends that the encounter rose to the level of an investigatory *Terry* stop.  Therefore, our decision turns on whether Goodloe was seized for purposes of the Fourth Amendment.  *State v. Pierce*, 125 Ohio App.3d 592, 597 (10th Dist.1998).  If the officers' conduct would lead a reasonable person to believe that he is not free to leave, the encounter constitutes a *Terry* stop that requires specific, articulable facts to justify the intrusion.  *Terry* at 21.[1]

### C.  Did the Police Officers Seize Goodloe?

{¶ 12}   In concluding that Goodloe had been seized in this case, the trial court placed significant emphasis on the location of the officers when they approached him on the sidewalk.  The trial court found that one officer was blocking Goodloe's route on the sidewalk and that the other was within a foot or two of him on the other side.  We agree that this factor is significant.

{¶ 13}   The act of blocking one's path to leave is conduct which indicates that a seizure has occurred.  *State v. Allen*, 9th Dist. No. 02CA0059, 2003-Ohio-2847, ¶ 13; *State v. Lewis*, 179 Ohio App.3d 159, 2008-Ohio-5805, ¶ 13 (6th Dist.) (seizure occurred when officer blocked defendant's path to walk away); *Guinn* (act of blocking defendant's path into apartment constituted seizure).  *Compare State v. Swonger*, 10th Dist. No. 09AP-1166, 2010-Ohio-4995, ¶ 22 (concluding that no seizure occurred and noting that officers did not attempt to block defendant's path).  Here, not only did one officer stand directly in front of Goodloe, but another officer came up on his side and stood within one or two feet of him.  This occurred after the officers pulled up their cruiser right next to Goodloe on the sidewalk and approached him.  The presence of two uniformed officers

---

[1] We note that the state does not argue the officers had reasonable suspicion to conduct an investigative *Terry* stop.  The state's only argument on appeal is that this was a consensual encounter.

positioned as found by the trial court would communicate to a reasonable person that he was not at liberty to ignore the police and walk away.

{¶ 14} We also note two other facts that support the trial court's conclusion that the officers' show of authority constituted a seizure. First, we note that the officers drove past Goodloe and then turned around, stopped their cruiser close to him, and then approached him as he walked on the sidewalk. *See State v. Garcia*, 8th Dist. No. 97912, 2012-Ohio-5066, ¶ 24 (noting this fact in its seizure analysis). These facts further indicate that a reasonable person would believe the officers had focused their attention on him and that he was not free to leave or ignore the officers. Similarly, upon approaching Goodloe, the officers asked him about criminal activity and then pointedly asked Goodloe if he had any firearms. The accusatory nature of the questioning also creates an air of authority that could further cause a reasonable person to believe that he was not free to leave and that he had to answer the officer's questions. *State v. Hurt*, 2d Dist. No. 14882 (May 5, 1995) (noting that type of questions asked by officer during an encounter could indicate seizure). *See also State v. Cook*, 2d Dist. No. 20427, 2004-Ohio-4793, ¶ 15 (noting the officer's inquiry changed from requests for information to commands).

## III. Conclusion

{¶ 15} In light of the totality of the circumstances, we conclude that the officers' show of authority would have caused a reasonable person to believe that he was not free to leave. Therefore, the officers' stop of Goodloe constituted a seizure under the Fourth Amendment. Because the officers did so without a reasonable suspicion of criminal activity, the stop violated the Fourth Amendment's protection against unreasonable seizures. Accordingly, the trial court did not err by granting the motion to suppress. We overrule the state's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and CONNOR, JJ., concur.

_____